IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                  *

ROSEN SLAVCHEV,
                                  *

       Plaintiff,
                                  *

       v.                              CIVIL NO.: WDQ-06-2630
                                  *

ROYAL CARIBBEAN CRUISES, LTD.,
                                  *

       Defendant.
                                  *

*     *     *     *     *     *     *     *     *     *     *     *     *

                         MEMORANDUM OPINION

       Rosen Slavchev sued his former employer, Royal Caribbean

Cruises, Ltd. ("RCCL"), for breach of contract and breach of

fiduciary duty.[1]  Pending are Slavchev's motion to strike RCCL's

Reply and RCCL's motion for summary judgment.  For the following

reasons, Slavchev's motion will be denied, and RCCL's motion will

be granted.

I.   Background

       Slavchev, a Bulgarian national, worked as a cleaner in the

housekeeping department on RCCL's cruise ship, Rhapsody of the

Seas (the "Rhapsody").  Slavchev applied for the job through

RCCL's placement agency in Bulgaria, Golden Anchor.  Rosen

Slavchev Dep. 17:3-18:5.  After an interview, Slavchev was hired

_____

       [1] As a remedy, Slavchev seeks specific performance and a
permanent injunction, or in the alternative, a declaratory
judgment.  Compl. ¶¶ 59-72.

                                  1

by RCCL in December 2002.  Pl.'s Resp. to Def.'s Interrog. # 7.
Slavchev passed a medical examination, and on February 2, 2003,
reported to Galveston, Texas, to board the Rhapsody for duty.
Slavchev Dep. 23:4-8.[2]

In March 2003, Slavchev began experiencing stomach
discomfort, and he sought medical treatment.  Slavchev Dep.
61:17-62:4.  Slavchev was initially diagnosed with hemorrhoids,
but his symptoms worsened to include severe diarrhea and rectal
bleeding.  *Id.* 62:4-10, 72:13-14.  Slavchev sought treatment at a
medical center in Cozumel, Mexico, where on April 4, 2003, he was
declared not fit for duty.  Def.'s Supp. Mem. Ex. 7.  A
colonoscopy performed on April 7, 2003 revealed that Slavchev
suffered from ulcerative colitis.  *Id*. Ex. 9.  After taking his
prescribed medication and recuperation, Slavchev resumed his
cleaning duties on April 18, 2003.  Pl.'s Supp. Mem. Ex. 10.

On July 18, 2003, Slavchev left his cleaning job, and
returned to Bulgaria.  Slavchev Dep. 96:12-13.  In October 2003,
Slavchev contacted RCCL's medical claims case manager, Armando
Silva, to seek reimbursement for his medical expenses and lost
wages.  Def.'s Supp. Mem. Ex. 15.  Silva investigated whether

---

[2] Before his employment began, Slavchev executed a Sign-On
Employment Agreement that incorporated the terms of RCCL's
Collective Bargaining Agreement ("CBA") with its employees and
acknowledged Slavchev's receipt of the RCCL Employee Handbook and
CBA.  Def.'s Supp. Mem. Ex. 5.  According to the Sign-On
Agreement, Slavchev's anticipated term of employment was eight
months.  *Id.*

Slavchev was entitled to maintenance-and-cure benefits, and informed Slavchev on December 16, 2003, that RCCL would pay for his medical treatment and maintenance wages. *Id.* Ex. 16. At that time, Silva inquired whether Slavchev had reached "maximum medical cure" while he took his prescribed medication. *Id.* Over the next several months, Slavchev received payments for maintenance-and-cure benefits from RCCL. *Id.* Ex. 26.

In January 2004, Andy Gillig replaced Silva as Slavchev's case manager. On January 21, 2004, Gillig e-mailed a Golden Anchor representative to inquire whether Slavchev had reached maximum medical improvement ("MMI")[3] and to determine Slavchev's disability rating based on his job description. Def.'s Supp. Mem. Ex. 25. Slavchev received a 60% disability rating from his doctor, who also determined that Slavchev had achieved MMI status. *Id.* Exs. 18, 19. At this time, Gillig allegedly promised to cover 60% of Slavchev's disability. Slavchev Dep. 120:19-21. Slavchev received no further payments from RCCL. On October 6, 2006, Slavchev sued RCCL.

II. Analysis

A. Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is

---

[3] "Maximum medical cure" and MMI appear to be synonymous, and Slavchev has not disputed this characterization.

entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). The opposing party, however, must produce evidence upon which a reasonable fact finder could rely. *Celotex*, 477 U.S. at 324. The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

B. Slavchev's Motion to Strike RCCL's Reply

Slavchev argues that RCCL produced new testimony of a critical witness and new legal theories in its Reply. Specifically, Slavchev claims that RCCL has for the first time introduced the affidavit of Andy Gillig and that Slavchev has not had the opportunity to address Gillig's statements. Slavchev also asserts that RCCL's arguments on the vagueness of the alleged contract and the breach of fiduciary duty claim are new as well. RCCL counters that Gillig's affidavit was produced to rebut Slavchev's newly produced declaration. RCCL also asserts

4

that the contractual and fiduciary duty arguments in its Reply were substantially similar to those made in its original motion for summary judgment.

The Court has not considered either Slavchev's declaration or Gillig's affidavit in its decision.  The Court has also not considered RCCL's argument that the alleged agreement is too vague to be enforceable.  To the extent that Slavchev's motion to strike depends on these grounds, it will be denied as moot. However, Slavchev's basis for his fiduciary duty claim was not sufficiently clear until his Response.  *Compare* Compl. ¶ 55 ("RCC owed an extra-contractual fiduciary duty to Plaintiff."), and Pl.'s Resp. to Def.'s Interrog. # 23 (incorporating facts from contractual claim to breach of fiduciary duty claim), *with* Def.'s Supp. Mem. at 33 (RCCL's fiduciary duty did not arise solely out of alleged oral agreement).  Accordingly, the Court will consider RCCL's fiduciary duty argument in its decision, and Slavchev's motion to strike will be denied.

C. Breach of Contract

Slavchev contends that RCCL is bound by an alleged oral and written agreement by Gillig to pay him 60% disability.[4]

_____

[4] The parties reference Texas, Maryland, Florida, Norwegian, Bulgarian, and maritime law in their briefs.  The parties do not dispute that Slavchev, a cleaner on the Rhapsody, was a "seaman" entitled to maintenance-and-cure benefits for ulcerative colitis. General maritime law provides this remedy for injured seamen, and governs resolution of their claims.  *See, e.g.*, *The Osceola*, 189 U.S. 158, 175 (1903); *Ammar v. United States*, 342 F.3d 133, 142

Specifically, Slavchev alleges that Gillig orally promised to pay him disability benefits after his doctor determined he was at MMI status.  Pl.'s Supp. Mem. at 19.  Slavchev contends that an e-mail sent from Gillig to a Golden Anchor representative on February 10, 2004, confirms the substance of this oral agreement. *Id.* at 17.

RCCL argues that no enforceable agreement to pay Slavchev's disability expenses exists.  RCCL asserts that Slavchev provided inadequate consideration for the alleged agreement and that its alleged terms are so vague as to be unenforceable.  Def.'s Reply at 1.

---

(2d Cir. 2003).  Slavchev is not looking to increase or maintain his maintenance-and-cure benefits.  *See Saco v. Tug Tucana Corp.*, 483 F. Supp. 2d 88, 98-100 (D. Mass. 2007) (maritime law applies to such maintenance-and-cure claims).  Rather, Slavchev alleges that he made an agreement with Gillig that once he reached MMI status, RCCL would pay him 60% disability benefits.  Pl.'s Supp. Mem. at 20.  At the time of this alleged agreement, Gillig was in Miami, Florida, and Slavchev was in Bulgaria.  Although Slavchev's breach of contract claim is related to his previous maintenance-and-cure benefits, the Court will look to state common law contractual principles in making its decision.  *See Byrd v. Byrd*, 657 F.2d 615, 617 (4th Cir. 1981) (state law may supply the rule of decision in absence of pertinent admiralty law); *see also Princess Cruises, Inc. v. Gen. Elec. Co.*, 143 F.3d 828, 834 (4th Cir. 1998) (common law contractual principles apply to ship-repair contracts).
    On the breach of fiduciary duty claim, the parties do not dispute that Maryland law applies.  Slavchev alleges that the breach of fiduciary duty gives rise to a tort and contract claim.  Maryland follows the rule that the law to be applied in tort cases is the law of the state where the injury was suffered.  *Hauch v. Connor*, 295 Md. 120, 123-24, 453 A.2d 1207, 1209-10 (Md. 1983).  Slavchev is currently domiciled in Maryland and alleges that his injury is ongoing; therefore, Maryland law applies to his claim.

Slavchev emphasizes Gillig's February 10, 2004 e-mail as evidence of the 60% disability agreement.  Gillig's e-mail requested an additional report from Slavchev's Bulgarian doctor concerning his MMI status:

> If I do not have a report, and I continue to receive this same report (which is [a] good report by the way), I will submit this to claims in 1 week and consider this the doctor's declaration of MMI.  At this time, I will stop all of Mr. Slavchev's sick wages, and send his chart to claims, to be compensated appropriately for the 60% disability rating that the doctor has given him[.] . . .
>
> . . .
>
> . . . If I do not have [an MMI report] by next [T]uesday, I will proceed to submit this to claims as described.

Def.'s Supp. Mem. Ex. 18.  Slavchev claims that the phrase "to be compensated appropriately" in Gillig's e-mail assumes the existence of a previous oral agreement.  RCCL counters that the e-mail demonstrates only that Gillig was passing Slavchev's file to the claims department.

The e-mail alone does not demonstrate that a previous oral agreement existed between Slavchev and Gillig.  In the weeks before the February 10, 2004 e-mail, Gillig had pushed to determine whether Slavchev had reached MMI status.  Def.'s Supp. Mem. Ex. 18.  Achieving MMI status ends a shipowner's duty to pay maintenance-and-cure benefits.  *See Farrell v. United States*, 336 U.S. 511, 518-19 (1949).  Slavchev has not presented evidence that Gillig's inquiries were related to the alleged oral agreement for 60% disability benefits and not an attempt to

discern whether RCCL's payment obligations were terminated.

The alleged agreement also is not supported by adequate consideration.  Oral or written agreements are only enforceable as contracts if some bargained for exchange of detriment and benefit occurs between the promisor and promisee.  Restatement (Second) of Contracts § 71 (1981).  Forbearance of a legal right or claim satisfies this element of a bargained-for exchange.  *Id*.

Slavchev argues that he refrained from filing suit against RCCL in exchange for its promise to pay him 60% disability benefits.  Pl.'s Supp. Mem. at 26.  He contends that this forbearance provides the necessary consideration to enforce the alleged agreement.  RCCL counters, arguing that Slavchev never agreed to forbear from pursuing any legally significant acts.  Specifically, RCCL asserts that Slavchev's request for disability benefits and threat to file suit are insufficient consideration for the alleged agreement.

Slavchev contends that *Kossick v. United Fruit Co.*, 365 U.S. 731 (1961), supports his reasoning on consideration.  In *Kossick*, a shipowner refused a seaman's request to pay for private medical treatment when free treatment was available at a public hospital. *Id*. at 732.  The shipowner allegedly agreed to assume responsibility for inadequate treatment at the public hospital if the seaman was treated there.  *Id.*  Reversing the lower court's reliance on state law to bar the claim, the *Kossick* Court

8

determined that the seaman's good faith forbearance from pursuing further maintenance-and-cure benefits was valid consideration for the shipowner's alleged promise.  *Id.* at 737-38.  The Court therefore found that general maritime law applied to the seaman's claim.  *Id.* at 738.

Although Slavchev correctly asserts that a promisor's forbearance or agreement to forbear is legally sufficient consideration, neither *Kossick* nor the facts support his argument.  *Kossick* addressed whether admiralty law should apply to a seaman's claim of the scope of his maintenance-and-cure benefits; the consideration determination was tangential to the primary issue of choice of law.  *Id.*  In contrast, Slavchev contends that the alleged 60% disability agreement does not "flow" from maritime law or enhanced maintenance-and-cure claims.  Pl.'s Supp. Mem. at 30.[5]  Rather, the alleged agreement with RCCL stands on its own terms.  *Id.*  Slavchev's evidence that he refrained from filing suit against RCCL is his undated letter threatening to "look for [his] rights in legal order" and that the suit was not filed until now.  *Id.* at 26, Ex. 15.  At his deposition, Slavchev explained that he "waited" for the 60% payment from RCCL.  Slavchev Dep. 121:5-8, 127:10-128:9.

---

[5] Slavchev's contractual claim is based on the alleged agreement promised by Gillig.  Although the CBA and RCCL's claims process are related to Slavchev's breach of contract claim, they are not dispositive of whether the alleged agreement exists.  Accordingly, the Court will not address them in its decision.

The parties' actions do not demonstrate any indicia of a bargained-for exchange. Although Slavchev's "waiting" for payment could be construed as "waiting" to file suit in the event of nonpayment, there is no evidence that he refrained from doing so in exchange for a 60% disability compensation agreement. A reasonable jury could not conclude that this evidence is sufficient consideration for the alleged agreement between Slavchev and RCCL.[6] Accordingly, RCCL's motion for summary judgment on Slavchev's breach of contract claim will be granted.[7]

D. Breach of Fiduciary Duty

Under Maryland law,[8] whether a breach of fiduciary duty claim exists independently from a breach of contract claim is determined on a case-by-case basis. *Garcia v. Foulger Pratt Dev., Inc.*, 155 Md. App. 634, 682, 845 A.2d 16, 44 (Md. Ct. Spec. App. 2003). Regardless of this determination, a plaintiff must first: "identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available,

---

[6] Slavchev argues that the alleged agreement is bilateral, but alternatively contends that his actual forbearance is adequate consideration for a unilateral contract. Pl.'s Supp. Mem. at 25. There is no evidence that RCCL recognized Slavchev's alleged forbearance or acted in acknowledgment of it.

[7] As the Court concludes that there was insufficient consideration for the alleged agreement, RCCL's additional argument that the agreement was too indefinite to be enforced will not be addressed.

[8] The parties rely on Maryland law to resolve the breach of fiduciary duty claim. *See supra* n.2.

and select those remedies appropriate to the client's problem."
*Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 521 (Md. 1997).

RCCL contends that Slavchev has not identified how the alleged breach of fiduciary duty claim is any different from his breach of contract claim. Slavchev does not provide any additional specificity to the breach of fiduciary claim, but references *Garcia* for the proposition that in certain cases, a breach of fiduciary duty claim can exist independently from a breach of contract claim.

Slavchev has not sufficiently identified a fiduciary relationship between himself and RCCL. That RCCL was in a position to determine Slavchev's eligibility for disability payments or continued maintenance-and-cure benefits does not transform a former employee's relationship with an employer into a fiduciary one. Moreover, cases where a breach of fiduciary duty claim have existed apart from a breach of contract claim have been those where a clearly identified fiduciary relationship existed. *See, e.g.*, *Ins. Co. of N. Am. v. Miller*, 362 Md. 361, 375, 765 A.2d 587, 595 (Md. 2001) (principal-agent relationship). Absent this relationship, Slavchev's breach of fiduciary duty claim cannot exist. Accordingly, RCCL's motion for summary judgment on the breach of fiduciary duty claim will be granted.

III. Conclusion

For the above reasons, Slavchev's motion to strike RCCL's
Reply will be denied, and RCCL's motion for summary judgment will
be granted.


September 26, 2007                    _____/s/_____
Date                                  William D. Quarles, Jr.
                                      United States District Judge